UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO.  6:04-CV-194-KKC

EDWARD PHILLIP POORE, JR.,                                         PLAINTIFF,

v.                          **MEMORANDUM OPINION & ORDER**

STERLING TESTING SYSTEMS, INC.,                              DEFENDANT,

v.

USIS RECORD SEARCH, INC.                          THIRD PARTY DEFENDANT.

***************

This matter is before the Court on the Motions for Summary Judgment of the Defendant, Sterling Testing Systems, Inc. ("Sterling") (Rec. No. 41) and of the Third Party Defendant, USIS Record Search, Inc. ("USIS")(Rec. No. 42)[1].  For the following reasons, the Court will GRANT the motions in part and DENY the motions in part.  The motions will be GRANTED to the extent that they ask the Court to rule as a matter of law that Poore's claim under 15 U.S.C. § 1681d(d)(3) must be dismissed and that Poore is not entitled to punitive damages under FCRA. The motions are otherwise DENIED.

I.      FACTS.

The Plaintiff, Edward Phillip Poore, Jr. ("Poore") alleges that by letter dated June 4, 2003, Colgate-Palmolive Company ("Colgate") offered him a job contingent upon satisfactory completion

---

[1] USIS also filed a Written Stipulation for Extension of Time (Rec. No. 46) to reply to Poore's response to USIS's Motion for Summary Judgment which has been docketed in the Court's record as a Motion for Extension of Time.  As there is no opposition to the Motion, the Motion for Extension of Time (Rec. No. 46) is GRANTED in accordance with the parties' stipulation.

a background check.  (Rec. No. 1, Complaint ¶¶ 6-7).  On June 6, 2003, Poore signed a "Disclosure and Consent to Investigative Consumer Report," stating that he agreed to allow Sterling to conduct a "background investigation, which may include a reference check, criminal conviction check, credit report or Department of Motor Vehicle report on myself for the mutual benefit of myself and Colgate-Palmolive."   (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit K).

Colgate then contracted with Sterling to prepare an "investigative consumer report" on Poore. (Rec. No. 41, Sterling Motion for Summ. J. at 1).  Sterling, in turn, contracted with a company called Due Diligence, now known as USIS and referred to as USIS in this Opinion, to perform the criminal history check and provide Sterling with a report. (Rec. No. 41, Sterling Motion for Summ. J. at 1; Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 5).  USIS did not obtain records from Pulaski County, but instead bought the records from another consumer reporting agency, Advanced Background Check, Inc. ("ABC").  (Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 5).

USIS employee Tony Sanders states that, after receiving the records request from Sterling, USIS then transmitted that request to ABC with Poore's date of birth and social security number. Sanders states the report that ABC sent to USIS stated the criminal record had the same social security number and date of birth as were on the request from Sterling.  (Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 6).

On or about June 12, 2003, Sterling received a report from USIS stating that "Edward Phillip Poore" had been arrested on January 8, 2000 for "operating motor vehicle under influence – 2nd(M)" and that he had pleaded guilty to the charge. (Rec. No. 41, Sterling Motion for Summ. J., Exhibit B). The report states "Name on Court File:  Edward Phillip Poore."  It states "Name Given: Edward Phillip Poore." The report states, "County: Pulaski" and "State: KY."  The report also provides the

2

Docket #/Case # for the incident.  The report also provided a social security number and date of birth.  (Rec. No. 41, Sterling Mot. for Summ. J., Ex. C., Rau Aff., ¶ 4).

Valerie Rau, the account manager for the Colgate account at Sterling, states that, "[a] Sterling employee verified the accuracy of the criminal report by checking the social security number and date of birth of Poore that was supplied to Sterling by Colgate with the social security number and date of birth on the criminal report provided by" USIS.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit C, Rau Aff. ¶ 4).  Rau states the social security number and date of birth that Colgate gave to Sterling for Poore matched the social security number and date of birth on the criminal report provided by USIS.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit C, Rau Aff. ¶ 5).

Rau states that she then drafted a "notice of intent to take adverse action letter" for Colgate to send to Poore.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit C, Rau Aff. ¶ 8).  Rau e-mailed the letter to Colgate employees Kandy Clark, Dee Montgomery and Dorothy Gerner stating that the letter should be sent with the full background report and that Poore should be given five business days from the date the letter is sent to respond.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit D).

On June 18, 2003, Colgate sent Poore a "Notice of Intent to Take Adverse Action"  stating:

We wish to notify you that we have tentatively decided not to consider you for employment with Colgate-Palmolive. . . Specifically, Sterling Testing reported to us your criminal record.  Our decision in this regard is wholly or partially based on information contained in a consumer report you authorized us to obtain from Sterling Testing Systems whose address and telephone number are. . . .  Based on the information provided, we are rescinding our offer of employment.  However, you have the right to dispute directly with Sterling Testing Systems the accuracy or completeness of any information provided by it.  If you believe the information listed above is not accurate, please contact Sterling Testing Systems. . . within five business days of receipt of this letter.  To that end, we have included a free copy of your report for your review. We will not make a final decision regarding your application until June 25, 2003. This will give you an opportunity to contact us before we make a final

decision and let us know if you want to dispute the report submitted by Sterling. . . In accordance with the Fair Credit Reporting Act (the "Act") and any applicable state laws, in addition to the copy or your report, enclosed is a written summary of your rights under the Act, and if required, summary of state law rights.

(Rec. No. 41, Sterling Motion for Summ. J. at Exhibit E).

On June18, 2003 Courtney Gentile of Colgate then copied Rau on an e-mail to Kandy Clark and Dorothy Gerner stating that Colgate had sent the notice of intent to take adverse action letter to Poore and that, if Poore did not contact Sterling by June 26, 2003, Colgate could move forward with another candidate.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit C, Rau Aff. ¶ 9;  Ex.F ).  By letter dated June 21, 2003 to Colgate, Poore notified Colgate that he intended to dispute with Sterling its report on his criminal record.  Poore further stated he did not have a DUI offense on his record as reported by Sterling and enclosed a copy of his driving record.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit G).  On June 23, 2003, Poore faxed a letter with his criminal report to Sterling.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibits H & I).

USIS employee Sanders stated that, on June 23 2003, USIS received a notice from Sterling that Poore was disputing his report.   (Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 10). Sanders stated that USIS forwarded the dispute to ABC.   (Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 10).  Sanders stated that USIS contacted Pulaski County Court directly and learned that the date of birth on the court record was different than the Plaintiff's and that there was no social security number on the court record at all, let alone the Plaintiff's social security number.   (Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 11).  Sanders states USIS then sent a "clear" report on Poore on June 24, 2003.   (Rec. No. 42, USIS Motion for Summ. J., Sanders Aff., ¶ 6). (Sanders actually states the clear report was sent on January 24, 2003.  The Court presumes he meant June).

Sterling employee Rau states that she notified Colgate employees Gentile, Clark and Gurner

on June 24, 2003 by e-mail or by phone that Poore did not have a criminal conviction.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit C, Rau Aff. ¶ 10).  She states that she recommended to Gentile on June 25, 2003 by e-mail or by phone to reissue an employment offer letter to Poore with revised dates of employment. (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit C, Rau Aff. ¶ 11).

In her deposition, Colgate employee Kandy Clark stated that, when she found out on June 24th that Poore did not have a criminal record, the job he was originally offered was no longer open. (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit J, Clark Dep. at 37).  Clark stated that she did not know why Colgate did not offer the job to Poore when it became aware that he did not have a criminal record.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit J, Clark Dep. at 33).  She stated that Dorothy Gerner made the decision to hire another applicant before June 25th.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit J, Clark Dep. at 34).  She stated that she called Poore on June 25th to tell him he would go to the top of Colgate's hiring list. Clark further stated that Poore was the first person brought in during Colgate's next wave of hiring.  (Rec. No. 41, Sterling Motion for Summ. J. at Exhibit J, Clark Dep. at 35-36)

Poore then filed this action, asserting that Sterling violated the Fair Credit Reporting Act ("FCRA") at 15 U.S.C. §1681, *et seq*. (Rec. No. 1, Complaint ¶¶ 16-21).  He also asserts a claim of defamation against Sterling.  (Rec. No. 1, Complaint ¶¶ 22-26).

Sterling then filed a Third Party Complaint against USIS, asserting a breach of contract and negligence claim against USIS and a claim for indemnification, asserting that USIS must indemnify Sterling for all expenses it incurs in this action and for all damages, if any, for which Sterling is adjudged liable.  (Rec. No. 31, Amended Third Party Complaint). Sterling and USIS have now both

5

filed Motions for Summary Judgment. (Rec. Nos. 41, 42). In its motion, USIS argues only that Poore's claims against Sterling should be dismissed. USIS does not address the claims Sterling has asserted against USIS.

## II.    STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule

56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.*, 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.   THE FAIR CREDIT REPORTING ACT.

The purpose of FCRA is to require that "consumer reporting agencies adopt reasonable

procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . . ."  15 U.S.C. §1681(b).

The term "consumer reporting agency" ("CRA") is defined under the Act as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

A "consumer report" is defined as:

> "[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for: . . . .(B) employment purposes.

15 U.S.C. § 1681a(d).

## A.   Section 1681b – Purposes for which CRA can Provide Consumer Report.

Section 1681b of the Act provides the permissible purposes for which a CRA may furnish a consumer report to a third party.  For example, it provides that a CRA may furnish a consumer report to a person who the CRA believes intends to use the information in connection with a credit transaction with the consumer or  for employment purposes.  15 U.S.C. § 1681b(a)(3).

## B.   Section 1681c- Permissible Contents of Consumer Reports.

Section 1681c provides certain requirements relating to the contents of consumer reports. For example, a report may not contain information regarding cases under Title 11 or under the

Bankruptcy Act older than ten years or information regarding paid tax liens older than seven years. 15 U.S.C. § 1681c(a)(1)&(3). On the other hand, a CRA must generally disclose if a consumer disputes any information contained in the report. 15 U.S.C. § 1881c(f).

### C.      Section 1681d – Investigative Consumer Reports.

Section 1681d of the Act provides certain requirements with regard to "investigative consumer reports." The Act defines an "investigative consumer report" as

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

15 U.S.C. § 1681a(e).

With regard to investigative consumer reports, section 1681d provides that:

> Except as otherwise provided in section 1681k of this title, a consumer reporting agency shall not furnish an investigative consumer report that includes information that is a matter of public record and that relates to an arrest, indictment, conviction, . . . unless the agency has verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished.

15 U.S.C. § 1681d(d)(3).

### D.      Section 1681e – Procedures Required to Ensure Compliance with Act.

Section 1681e provides certain compliance procedures for CRAs. For example, it requires that every CRA maintain "reasonable procedures" to ensure that the content of its reports comply with 1681c and to ensure that its reports are furnished for the purposes listed in section 1681b. 15 U.S.C. § 1681e(a). Most relevant to this matter is a provision requiring that, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the

report relates." 15 U.S.C. § 1681e(b).

Section 1681e also provides certain responsibilities of a "person who procures a consumer report for purposes of reselling the report." 15 U.S.C. 1681e(e)(2). The Act provides that a reseller of consumer reports must "establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under 1681b of this title. . . ." 15 U.S.C. 1681e(e)(2).

In December, 2003 – after the conduct at issue in this matter occurred but before the filing of this Complaint – Congress amended FCRA with the Fair and Accurate Credit Transactions Act of 2003, P.L. 108-159 ("FACTA"). While at the time of the events in question in this matter, FCRA did not define the term "reseller," section 111 of FACTA specifically defines a "reseller" as:

> a *consumer reporting agency* that –
>
> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u)(emphasis added).

This provision became effective on March 31, 2004. 12 C.F.R. § 222.1.

**E.     1681i – Dispute Procedures.**

Section 1681i provides for certain procedures that must be followed if the "completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A). The provision further states that, if the consumer notifies the CRA of the disputed information, the CRA must reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file before the end of the 30-day period beginning on the date that the agency receives notice of the dispute from

the consumer. 15 U.S.C. § 1681i(a)(1)(A). Section 1681i further provides that, before the expiration of the 5-day business period beginning on the date on which a consumer reporting agency receives notices of a dispute, the agency must notify any person who provided any item of information in dispute. 15 U.S.C. § 1681i(a)(2)(A). With FACTA, Congress amended sections 1681i(a)(1)(A) and (2)(A) to require a CRA to reinvestigate the accuracy of information and notify providers of the disputed information when either the *consumer or a reseller* notifies it of a dispute.

In addition, section 317 of FACTA added a provision regarding the reinvestigation requirements of resellers, providing that, after receiving notice from a consumer of a dispute concerning information contained in a consumer report produced by the reseller, the reseller is required, within 5 days, to determine whether the inaccuracy is due to the reseller's own act; and, if so, it must correct the information or delete it within 20 days. 15 U.S.C. § 1681i(f)(2)(B)(I). If, however, the reseller determines that the inaccurate information was not caused by the reseller, then it must simply provide notice of the dispute to each CRA that provided the reseller with the information that is the subject of the dispute. 15 U.S.C. § 1681i(f)(2)(B)(ii). Otherwise, a reseller is exempt from the dispute procedures outlined under 1681i. § 1681i(f)(1).

These amendments to 1681i contained in FACTA became effective on March 31, 2004 and, thus, were not in effect at the time of the events in this matter. 12 C.F.R. § 222.1(c)(2).

**F.    1681k – Requirements Regarding Public Record Information in Consumer Report for Employment Purposes.**

Also relevant to this matter is section 1681k of the Act which provides that a CRA:

which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall —

(1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is

11

being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse affect on a consumer's ability to obtain employment is reported it is complete and up to date.  For purposes of this paragraph, items of public record related to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a).

**G.     1681n and 1681o – Damages.**

Sections 1681n and 1681o of FCRA impose civil liability for violations of the Act.  Section 1681n deals with the liability of "[a]ny person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer" providing that such person is liable to the consumer for actual damages, punitive damages and attorney's fees and costs. 15 U.S.C. § 1681n(a)(emphasis added).

Section 1681*o* deals with the liability of "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer" and provides that such person is liable to the consumer in an amount equal to the consumer's actual damages and attorney's fees and costs.  15 U.S.C. § 1681*o*(a).

**IV.     ANALYSIS**

**A.     Sterling's Obligations under the Act.**

**1)     Reseller's Obligations under the Act.**

In its Motion for Summary Judgment, Sterling argues that it cannot be held liable for the inaccurate information contained in the consumer report it provided to Colgate because it was simply a reseller of the consumer report or, at least, the portion of the report that erroneously stated that

12

Poore pleaded guilty to a DUI. (Rec. No. 41, Mot. for Summ. J. at 5). Sterling states it purchased this portion of the report from USIS and then resold the criminal history report to Colgate as part of a larger consumer report. (Id.).

Sterling argues that, as a reseller, its sole obligations are found in section 1681e(e)(2) of FCRA which required it to establish reasonable procedures to ensure that the report is used by the end user for proper purposes under FCRA. Sterling argues that, as a reseller, however, it had no obligation to ensure or verify the accuracy of the information provided to it by USIS.

A CRA's obligations to ensure the accuracy and currency of information contained in a consumer report are found in sections 1681d(d)(3)(regarding investigative consumer reports); 1681e(b)(regarding consumer reports); and 1681k(regarding adverse public record information). None of these provisions contains any language that explicitly exempts a reseller from the obligation to ensure the accuracy of the information it resells. While section 1681e contains a provision explicitly addressing a reseller's obligation to establish reasonable procedures to ensure that its report is sold for proper purposes, this provision does not state that these are the only obligations of a reseller under the Act. Nor does section 1681e states that a reseller has no obligation to establish procedures to ensure the accuracy of the information it resells.

FCRA now specifically states that a reseller is, in fact, a "*consumer reporting agency*." 15 U.S.C. § 1681a(u)(emphasis added). While this definition was not in effect at the time of the conduct in question, it is a reliable indicator of what was intended by the term "reseller" in FCRA. *United States v. Dauray*, 215 F.3d 257, 263 (2nd Cir. 2000)("statute should be construed to be consistent with subsequent statutory amendments"); *United States v. Monroe*, 943 F.2d 1007, 1016 (9th Cir. 1991)(subsequent amendments to a statute that serve to clarify rather than change existing

13

law are entitled to substantial weight in construing the earlier law).

Where Congress has chosen to limit a reseller's obligations under the Act, it has explicitly done so. Section 1681i, which provides procedures that a CRA must employ if a consumer disputes information contained in a CRA's consumer file, specifically provides for obligations pertaining only to resellers and specifically provides that resellers are otherwise exempt from the requirements of section 1681i. 15 U.S.C. § 1681i(f)(1).

As evidence that it had no obligation to ensure the accuracy of the consumer report at issue, Sterling cites to *Lewis v. Ohio Professional Electronic Network, LLC*, 248 F.Supp.2d 693 (S.D. Ohio 2003) in which the district court held that a resellers' obligation under the Act are found only in section 1681e(e)(1)(regarding procuring a consumer report for resale and responsibilities of a reseller). This Court is, of course, not bound by the *Lewis* decision. Furthermore, in *Lewis*, the district court based its decision on the fact that 1681e(e)(1) and (2) are the only provisions of FCRA that pertain to resellers and that provisions applying to "consumer reporting agencies" could not apply to resellers. *Id*. at 698. That decision was made without the benefit of the 2003 amendments to the Act which, as stated, specifically provide that a reseller *is* a consumer reporting agency. Thus, under the plain language of the statute as clarified by Congress in 2003, any portions of FCRA applying to consumer reporting agencies also apply to resellers unless, of course, there is an explicit provision to the contrary.

In *Weidman v. Federal Home Loan Mortgage Corp.*, 338 F.Supp.2d 571 (E.D. Penn. 2004), the district court cited an FTC statement that "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies and have all the obligations of other CRAs, including the duty to reinvestigate information disputed by

14

consumers." *Id.* at 575 (citing Prepared Statement of Federal Trade Commission on the Fair Credit Reporting Act Before the Senate Committee on Banking, Housing and Urban Affairs, July 10, 2003, 2003 FTC LEXIS 101, 14-15)).

In the full statement, which was made in support of FACTA's amendments to FCRA, after stating that resellers are subject to all the obligations of other CRAs under FCRA, the FTC explained that, "resellers are an important source of consumer reports, but the current FCRA dispute obligations of CRAs and furnishers do not work well when applied to resellers. The Commission supports amending the FCRA to better address reinvestigation duties when a resellers is involved."[2] With FACTA, Congress amended FCRA to exempt resellers from the reinvestigation obligations of CRAs and to provide for reinvestigation obligations specific to resellers, but it did not otherwise exempt resellers from a CRA's obligations under the Act.

In a Staff Opinion Letter, the FTC states that it is clear from the legislative history of FCRA that Congress intended for the Act to cover a very broad range of "assembling" or "evaluating" activities. 1998 WL 34323759, FTC Staff Opinion Letter, William Haynes (June 9, 1998). As an example of the broad range of activity covered by FCRA, the FTC cites specifically to "resellers," stating that these entities are covered by FCRA even though they "may do nothing more than transmit to their customers a report obtained from another consumer reporting agency." *Id.* at n.1.

In the Opinion Letter, the FTC further explains that, "in committee reports accompanying various versions of the amendments to the FCRA that were ultimately enacted into law in September, 1996, there are statements that 'resellers'. . . .are 'consumer reporting agencies.'" *Id.* (citing to S. Rep. No. 103-209, 1993 WL 516162 at 16 (1993)) (stating "'resellers' are, by definition,

---

[2] The full statement can be found on the FTC's website at ftc.gov/os/2003/07/fcrasenatetest.html

consumer reporting agencies, and the Committee intends that they be subject to all the requirements of the FCRA.").   Again, with the 2003 amendments, the Act now specifically provides that "resellers" are "consumer reporting agencies" for purposes of the Act.

> **2)      Sterling is a CRA and Not a Reseller.**

Nevertheless, this Court need not decide the issue of whether "resellers" are subject to all the requirements of FCRA because Sterling is not a "reseller."   Again, at the time of the events in question, FCRA did not define "reseller." Congress has now clarified the Act to specifically provide that a "reseller" is a consumer reporting agency that –

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u).

With its Motion for Summary Judgment, Sterling has not addressed this definition of "reseller."  USIS, however, submits the affidavit of Sterling employee Rau who states that "Sterling does not maintain a database of assembled or merged information concerning any consumer collected from other consumer reporting agencies from which new consumer reports are produced." (Rec. No. 52, Rau Aff. ¶ 2).  There is no evidence to the contrary in the record.

Thus, assuming that, under FCRA, an entity is *either* a reseller *or* a CRA, the issue is whether, in creating the consumer report on Poore, Sterling assembled and merged information contained in the database of another consumer reporting agency, making it a reseller of the report; or whether Sterling itself assembled or evaluated consumer credit information about Poore, and regularly engages in such activity, making it a CRA under section 1681a(f).

16

Sterling argues that, since it purchased the disputed portion of the report from USIS and then resold it to Colgate, it is simply a reseller of the disputed portion and, thus, is not responsible for its contents. The Court has been unable to locate any authority for the proposition that an entity can be deemed a "reseller" with regard to a portion of a consumer report that it produces to a third party and a CRA with regard to other portions of the report.

The legislative history of FACTA indicates that, by the term, "reseller," Congress intended to include, for example, "intermediaries who consolidate reports for mortgage lenders." H.R. Rep. 108-263, 2003 WL 22064665 at 43. Citing to the legislative history of FCRA, the FTC has indicated that a "reseller" is an individual "who obtain[s] consumer reports at bulk rates from large credit bureaus or other consumer reporting agencies for resale." 1998 WL 34323759, Staff Opinion Letter, William Haynes (June 9, 1998). In the prepared statement to the Senate Committee on Banking, Housing and Urban Affairs discussed above, the FTC stated, "[t]ypically, resellers combine information from the three major CRAs (also sometimes referred to as 'repositories' in this context) to produce reports for mortgage lenders." Prepared Statement of the FTC, ftc.gov/os/2003/07/fcrasenatetest.html (July 10, 2003).

Thus, it appears that a reseller is an entity that purchases and resells consumer reports but does not itself create any consumer information contained in the reports. Here, Poore consented to permit Sterling itself to conduct a background investigation of him, including a reference check, criminal conviction check and credit report. (Rec. No. 41, Sterling Mot. for Summ. J., Ex. K). According to Sterling, it contracted with Colgate to prepare an "investigative consumer report" on Poore. Sterling, in turn, contracted with USIS to "research the criminal record history of prospective employees of [Sterling's] clients." (Rec. No. 11, Sterling Motion for Leave to File Third Party

17

Complaint, USIS Contract attached, § 2(a)).  The Sterling-USIS Agreement further states, "it is understood between the parties that Contractor [USIS] shall act in the capacity of an independent contractor. . . ."  (Id., § 5(a)).

Thus, Colgate hired Sterling to prepare an investigative consumer report on a particular individual, a portion of which consisted of a criminal record history.  Sterling then hired USIS as an independent contractor to research the criminal record history of various prospective employees of Sterling's clients, including Poore.  Sterling ultimately produced a report to Colgate on its letterhead containing not only the criminal record history at issue, but also results of an interview with Dewey Tomlison, Poore's former supervisor in which Tomlison was asked such questions as his impressions of Poore's work and Poore's strongest and weakest business skills.

Under these circumstances, Sterling cannot be viewed as a "reseller" of the consumer report on Poore.  Instead, Sterling itself assembled and evaluated information on Poore for the purpose of furnishing the report to Colgate.  There does not appear to be any dispute that Sterling performed this service for Colgate for a fee.  Further, Sterling's contract with USIS makes clear that Sterling regularly engages in this activity.  Finally, it is clear that Sterling used the United States mails to provide these services.  Accordingly, Sterling meets the definition of "consumer reporting agency" under FCRA. 15 U.S.C. § 1681a(f).  *See, e.g., Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir. 2001)(finding that an entity was a CRA and subject to liability under § 1681e(b) and 1681k for selling erroneous criminal record where entity subcontracted with second entity to perform criminal records check who contracted with third entity who actually performed criminal records search).

In addition, the written report that Sterling ultimately produced to Colgate contained

information regarding Poore's character and personal characteristics which was expected to be used as a factor in establishing Poore's eligibility for employment. Accordingly, the report is a "consumer report" under FCRA. 15 U.S.C. § 1681a(d).

As to whether the report is an "investigative consumer report," again section 1681a(e) defines an "investigative consumer report," as a "consumer report or portion thereof in which" certain information is obtained through personal interviews. 15 U.S.C. § 1681a(e). The report produced by Sterling contained information on Poore's character and personal characteristics that was obtained through a personal interview with Poore's former supervisor. Accordingly, it is an "investigative consumer report" under 15 U.S.C. § 1681a(e).

### C.     Section 1681e(b).

In the general provision regarding the care required of all CRAs with regard to all consumer reports, FCRA provides that a CRA must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

Sterling argues that Poore has failed to state a claim under this provision because he does not specifically mention section 1681e(b) in his Complaint. Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plaint statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Poore's Complaint alleges that Sterling provided inaccurate information in a credit report to Poore's prospective employer. He also specifically alleges that Sterling violated "15 U.S.C. Section 1681." (Rec. No. 1, Complaint, ¶ 16). He further complains that Sterling failed to verify the accuracy of the information it reported and failed to maintain "strict procedures" to ensure that

19

its information was complete and up to date. (Rec. No. 1, Complaint, ¶ 17, 19). Poore specifically alleges that Sterling was negligent in supplying the inaccurate information. (Rec. No. 1, Complaint, ¶ 20). Accordingly, Sterling had fair notice that Poore claimed that Sterling did not employ reasonable procedures to assure maximum possible accuracy of the information it reported about Poore in violation of section 1681e(b).

To make out a violation under section 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information. *Dalton*, 257 F.3d 409 at 415. A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect. *Id*. There can be no dispute that Sterling's consumer report on Poore contained inaccurate information.

The FTC has stated that an agency "does not violate this section simply by reporting an item of information that turns out to be inaccurate." 16 C.F.R. Pt. 600 App. The FTC has also stated that, "[w]hether a consumer reporting agency may rely on the accuracy of information from a source depends on the circumstances. This section does not hold a consumer reporting agency responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source." 600 C.F.R. Pt. 600, App.

In *Bryant*, however, the Sixth Circuit stated, "we hold that a consumer reporting agency does not necessarily comply with [Section 1681e(b)] by simply reporting in an accurate manner the information it receives from creditors." 689 F.2d at 78. The court noted that, under the plain language of the statute, liability requires a finding that the agency failed to follow reasonable procedures to assure "maximum possible accuracy" of the information it reports about a consumer.

20

"The issue of whether the agency failed to follow 'reasonable procedures' will be a jury question in the overwhelming majority of cases." *Dalton*, 257 F.3d at 416 (citing cases). "The determination of the 'reasonableness' of the defendant's procedures, like other questions concerning the application of a legal standard to given facts. . .is treated as a factual question even when the underlying facts are undisputed.  It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question." *Crabill v Trans Union, LLC*, 259 F.3d 662, 663 (7th Cir. 2001).

 "Once it is determined that a consumer report is in fact inaccurate, Congress has committed to a jury determination the question of whether the consumer reporting agency compiling the report followed reasonable procedures to assure maximum possible accuracy of the information contained in the report.  The standard of conduct by which the agency's action is to be judged is deeply rooted in the law of negligence: what a reasonably prudent person would do under the circumstances." *Bryant v. TRW, Inc.*, 487 F. Supp. 1234, 1242 (E.D. Mich. 1980), *aff'd*, 689 F.2d 72 (6th Cir. 1982).

Sterling argues that it complied with this section by reasonably relying on USIS  to provide an accurate criminal report on Poore and by matching the birth date and social security number on the USIS criminal report with the birth date and social security number provided by Colgate.  (Rec. No. 41, Motion for Summ. J. at 8). As evidence that its reliance on USIS was reasonable, Sterling cites to the fact that it has provided 934 other consumer reports to Colgate and no other consumer has complained about the reports. (Id.).  However,  the Court has been unable to locate in the record any information regarding any procedures that Sterling may employ to ensure that the information that it receives from USIS and its subcontractors is accurate.

In her affidavit submitted in support of Sterling's Motion for Summary Judgment, Sterling

21

employee Rau does not address any such procedures. While USIS submits an affidavit regarding the procedures that it employs to monitor the accuracy of its information providers (Rec. No. 49, USIS Reply, Sanders Aff.), for purposes of Poore's claim against Sterling, it is Sterling's procedures that are under review. While the Court recognizes that it is the plaintiff's burden to prove Sterling's procedures were unreasonable, at this point the Court has no evidence that Sterling employed any procedures to ensure the accuracy of its consumer reports at all other than relying on USIS.  The Court cannot rule as a matter of law that such reliance was reasonable.

> **B.      Sections 1681d(d)(3) and Section 1681k.**

Again, with regard to certain public record information contained in *investigative* consumer reports, including arrests and convictions, section 1681d(d)(3) requires that, "[e]xcept as otherwise provided in section 1681k of this title," a CRA cannot furnish the report  unless it has "verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished."  15 U.S.C. § 1681d(d)(3).

The exception provided in section 1681k is that, with regard to a consumer report furnished for employment purposes that reports public record information that is *likely to have an adverse effect upon a consumer's ability to obtain employment,* CRAs can either (1) notify the consumer that the public record information is being reported and to whom it is being reported; or (2) maintain strict procedures designed to insure that such public record information is complete and up to date. 15 U.S.C. § 1681k(a).

Thus, it appears that where, as here, a CRA reports public record information in an investigative consumer report that is likely to adversely affect the consumer, section 1681k controls instead of section 1681d(d)(3) and requires that a CRA either 1) notify the consumer of the

22

information as provided in § 1681k(a)(1); or 2) maintain strict procedures to insure that the information is "complete and up to date" as provided in § 1681k(a)(2). The phrase "strict procedures" is not defined in the statute. Nevertheless, it is clear that §1681k requires "heightened standards for procedures used to collect information for employment purposes." *Dalton*, 257 F.3d at 417.

Sterling argues that Poore knew the criminal record was being sent to Colgate and that it also drafted the "intent to take adverse action" letter that Colgate sent to Poore. Sterling appears to argue that this complies with the notice requirements of subsection (1) of § 1681k(a). (Rec. No. 41, Motion for Summ. J. at 9). That provision requires that the CRA notify the consumer that it will be reporting the public record information "at the time such public record information is reported to the user of such consumer report." 15 U.S.C. § 1681k(a)(1). There is no evidence in the record that Sterling ever notified Poore that it would be reporting the DUI conviction to Colgate, let alone that such communication occurred at the same time that Sterling notified Colgate of the DUI. Accordingly, the Court cannot find that Sterling complied with subsection (1) of section 1681k(a).

As to subsection (2), as with the "reasonable procedures" required under § 1681e(b), Sterling argues that it complied with this section by relying on USIS and by matching the birth date and social security number on the USIS criminal report with the birth date and social security number provided by Colgate. (Rec. No. 41, Motion for Summ. J. at 8). Just as there is an issue of fact as to whether such reliance and procedures were "reasonable" under § 1681e(b), there is an issue of fact as to whether these actions constitute "strict" procedures under § 1681k.

Sterling and USIS also appear to argue that Sterling complied with this provision in that the report they provided to Colgate was, in fact, "complete" and "up to date." The Act specifically states

that, "items of public record related to arrests, indictments, convictions. . . shall be considered up to date if the current public record status of the item at the time of the report is reported." 15 U.S.C. § 1681k(2). The act does not define "complete." Thus, the Court will construe the term in accord with its ordinary or natural meaning. *Chapman v. United States*, 500 U.S. 453, 461-62 (1991). Webster's Dictionary defines the term "complete," as "having all necessary parts." Webster's Collegiate Dictionary 235 (10th ed. 1998). In a Staff Opinion Letter, the FTC stated that "we believe that the CRA complies with [section 1681k(2)] if its report is 'complete and up to date' in the sense that it includes the current public record status of each individual item reported." 1999 WL 33932137, FTC Staff Opinion Letter, Clarke W. Brinckerhoff (Dec. 16, 1999). Sterling's consumer report reported a DUI conviction. A reasonable juror could conclude that this item was not complete and that this item did not reflect the current public record status of the DUI conviction since the report did not include the actual name, birthdate or social security number of the person who was convicted of the crime.

### D.    Punitive Damages for Willful Noncompliance.

Again, sections 1681n provides for punitive damages for"[a]ny person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. § 1681n(a)(emphasis added). Under section 1681n, "the Plaintiff must show that defendant knowingly and intentionally committed an act in conscious disregard for the rights of others but need not show malice or evil motive." *Smith v. Bob Smith Chevrolet, Inc.*, 275 F.Supp.2d 808, 821 (W.D. Ky. 2003).

Sterling has stated that it believes its reliance on USIS to provide accurate information constitutes "strict" and "reasonable" procedures to assure the accuracy of the information it reports.

24

While a reasonable jury could conclude that such reliance was negligent, a reasonable jury could not conclude that, in relying on USIS, Sterling knowingly and intentionally violated FCRA. There is no evidence that Sterling was aware that its subcontractors were unreliable or had any history of incorrect reporting.  In fact, the evidence is to the contrary.  Furthermore, there is no evidence that, once it was notified of the inaccuracy, Sterling disregarded the information.  Sterling corrected Poore's report within one or two days.  Accordingly, Poore is not entitled to punitive damages under FCRA.

### E.       Emotional Distress and Humiliation.

Actual damages may include "recovery for emotional distress and humiliation." *Lewis*, 248 F.Supp. 2d at 702 (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Poore testified that he was embarrassed and humiliated as a result of Sterling's inaccurate report. The Court has been unable to locate any authority in the Sixth Circuit for the proposition that a plaintiff's testimony is insufficient to create an issue of fact as to whether the plaintiff suffered emotional distress and humiliation as the result of inaccurate information in his consumer report. The Defendants have offered no evidence that Poore did not, in fact, suffer such emotional distress and humiliation.  Accordingly, there is an issue of material fact about whether Poore suffered such damages that a jury must resolve.

### G.       State Law Defamation Claim.

Section 1681h(e) of FCRA provides:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of

a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

"Section 1681h(e) suggests not that Congress has limited actions brought in all areas regulated by the FCRA but that defendants will have qualified immunity from actions based on information disclosed pursuant to certain provisions of the FCRA." *Webb v. Bob Smith Chevrolet, Inc.*, 2005 WL 2065237 at *5 (W.D. Ky. Aug. 24, 2005). In *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F.Supp.2d 810, 814-15 (W.D.Ky. 1999), the district court explained that, "section 1681h(e) is not actually a preemption provision. Rather, it is a *quid pro quo* grant of protection for statutorily required disclosures. Since various parts of the federal statute require consumer reporting agencies and information users to disclose information to consumers under certain circumstances, this section guarantees that the agencies or users cannot be sued for those required disclosures under state tort law. It makes sense that acts required to be done by the FCRA are immunized from state tort liability."

Here, Poore's defamation claim is based on information provided by a CRA to a prospective employer. It is not based on the disclosures to consumers required under section 1681g, 1681h and section 1681m. Nor is it based on information disclosed by a user of a consumer report. Accordingly, Poore's state law defamation claim is not prohibited under section 1681h(e).

## IV.   CONCLUSION.

For all the above reasons, it is hereby ORDERED that:

1)      the Motions for Summary Judgment filed by Sterling (Rec. No. 41) and USIS (Rec. No. 42) are GRANTED in part and DENIED in part. The motions are GRANTED

26

to the extent that they ask the Court to dismiss Poore's claim under 15 U.S.C. §

1681d(d)(3) and that claim is hereby DISMISSED. The motions are also GRANTED

to the extent they ask the Court to rule as a matter of law that Poore is not entitled to

punitive damages under FCRA. The motions are otherwise DENIED.

2)      USIS's Motion for Extension of Time (Rec. No. 46) is hereby GRANTED.

In addition to regular service by mail, a copy of this Order shall be transmitted forthwith to

counsel of record by facsimile or by electronic filing.

Dated this 19th day of January, 2006.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**